MELBA B. RODRIGUEZ *v.* UNITED STATES

No. 7752.—
Entry Nos. 199–H; 218–H; 242–H.

First Division, Appellate Term

(Decided October 31, 1949)

*L. Hamilton Lowe* and *Orville I. Cox* (*William Whynman* of counsel) for the appellant.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., dissenting

OLIVER, Chief Judge: This application for review of the decision and judgment of the trial court, sitting in reappraisement (Reap. Dec. 7405), was filed under the provision of section 501, Tariff Act. of 1930. The merchandise consists of metal bobby pins imported from Mexico. The merchandise in reappraisement No. 155707–A, imported on November 29, 1943, was entered at 16.75 Mexican pesos per "grand" gross, plus packing, containers, and stamps, and was. appraised at $3.6666 per great gross, net, packed, less freight charges and consular fee. The merchandise in reappraisement No. 155708–A, imported on December 10, 1943, was entered at 16.75 Mexican pesos. per "grand" gross, including stamps and packing, less cartage charges. and consular fee, and was appraised at $3.6666 per great gross, net,. packed, less cartage charges and consular fee. The merchandise in reappraisement No. 155709–A, imported on December 30, 1943, was entered at 16.75 Mexican pesos per great gross, plus stamps, including brokerage and export charges, and was appraised at $3.6666 per great gross, net, packed. The appraised values were held by the lower court to be the dutiable values of the imported merchandise. The court below held that the importer had failed to establish a price at which the merchandise was freely offered for sale by manufacturers to all purchasers in the ordinary course of trade and hence had not overcome the presumption of correctness attaching to the appraiser's finding of value.

Specifically the trial court held that statements contained in the affidavits herein that certain prices were the freely offered prices to all customers are not proof of market value or price at the time of exportation of the merchandise; that it is "impossible to find a single freely offered price to all purchasers in the ordinary course of trade."

The appellant (importer) maintains that it has established a freely offered price for the imported articles and contends that either the manufacturer's price for the involved merchandise or, in the alternative, the dealer's price represented by the entered price of 16.75 Mexican pesos per great gross should be accepted as the proper value. The appellee, on the other hand, contends that the presumption of

correctness attaching to the appraiser's finding of value has not been overcome and that the importer has failed to prove any other or different value than the appraised value for the imported or similar merchandise.

The importer at the trial introduced in evidence the oral testimony of Leopoldo Cantú and documentary exhibits which will be subsequently referred to. The Government offered no oral testimony but introduced in evidence a special agent's report (exhibit 6). The witness Cantú testified that the merchandise consisted of metal bobby pins and that the purchase of them was made through his agent, one Gregorio Eguía. He further stated that he did not know anything about the value of the merchandise at the time of purchase, but relied on his agent, to whom he gave a check covering the purchase price and expenses.

An affidavit of the importer's agent, Gregorio Eguía, herein (plaintiff's exhibit 1) states in substance that he is a general merchant in Monterrey, Mexico; that he acts as a commissionaire or agent in the purchase of merchandise which he does not maintain in stock, and that he acted as agent for Cantú to purchase bobby pins; that no bobby pins were offered for sale in Monterrey and that he went to Mexico City, where he contacted another commissionaire, one Cuéllar, who assisted him in obtaining the bobby pins covered by reappraisement Nos. 155707–A and 155708–A; that all the bobby pins covered by the entries therein were shipped directly from Mexico City to Cantú and billed to him. The affidavit further set forth that the affiant was present when the arrangements were made for the purchase of these bobby pins and that he handed the money to Cuéllar, who paid for them at the rate of 16.75 Mexican pesos per great gross. The affiant further states that he received a commission from Cantú of 500 pesos and an additional 1,000 pesos for his expenses and disbursements.

The affidavit of one Ramiz Barquet (plaintiff's collective exhibit 2) states that he was the manager of Cía. Com. Dibaco, S. A., and that his company sold 2,800 packages of iron bobby pins to Cuéllar, 2,700 packages of which were purchased from the manufacturer, Penhas y Barouh S. de R. L., at 13 pesos (Mexican currency) a great gross; that it had on hand the other 100 packages; that his company is a jobber and resells to other wholesalers as well as at retail. The affidavit further states that the price to Cuéllar was 16.75 Mexican pesos per package of one great gross each; that such price was the freely offered price to all purchasers whether for exportation to the United States or for Mexican consumption; that such sale was made in the ordinary course of business without restrictions and in the usual wholesale quantities; and that "The price did not vary with the quantity purchased."

The affidavit of one George A. Francis (plaintiff's collective exhibit 3) states that he is an importer, exporter, and commissionaire; that he purchased 200 packages, each containing one great gross of 1,728 bobby pins from Salvador Montal, the manufacturer, at 13.50 Mexican pesos a great gross, and resold these identical bobby pins to Cuéllar for the account of Cantú at 16.75 Mexican pesos a great gross; that such price was the freely offered price for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities without restrictions whether for exportation or for home consumption; and that the price did not vary with the quantity purchased.

The affidavit of Mario Barouh (exhibit 4), a member of the firm of Penhas y Barouh S. de R. L., manufacturer of bobby pins, states that in November 1943 his firm sold 1,000 great gross of identical bobby pins to a Mexican purchaser at 12.50 Mexican pesos per great gross; that they also sold 2,700 packages to Cía. Com. Dibaco, S. A., a Mexican purchaser, at 13 Mexican pesos per package; that the highest price of his offers and sales for exportation to the United States was 12.50 Mexican pesos per package between November 1943 and August 1944; that the unit wholesale quantity was one great gross containing 1,728 bobby pins; that the price of 12.50 Mexican pesos for exportation to the United States and the price of 13 Mexican pesos for home consumption were the freely offered prices for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities; and that the respective prices did not vary with the quantity purchased.

The affidavit of Bernardo Solares (plaintiff's exhibit 5) states that his company, now out of business, manufactured bobby pins in 1943 and that between September and December 1943 his highest offered price for sale of bobby pins was 12 Mexican pesos; that the unit quantity consisted of one package containing one great gross; that the price did not vary with the quantity sold; that the price for exportation to the United States and the price for Mexican consumption were the same; and that no restrictions were placed on such sales.

The only evidence introduced by the Government is a special agent's report (exhibit 6, R. 16). This report does not contain any facts upon which a finding of value may be made nor any facts to support the value found by the appraiser. Neither does it contradict any of the facts set forth in the affidavits introduced by the importer. The Government concedes as much in its brief, wherein counsel states, page 5:

While it may be true that Exhibit No. 6 offered by the Government does not support the values returned by the appraiser * * *, it does indicate that the importer was unable to furnish any specific information as to exact market value, * * *.

This record discloses a situation where the Mexican manufacturers sell some of their merchandise to concerns who purchase with a view toward reselling at a profit.

Each manufacturer, or original seller, creates the primary market for his merchandise and his sales and offers for sale must be considered as establishing value, providing all of the provisions of section 402, Tariff Act of 1930, are met. The dealer's resale market need not be considered unless the value in the primary market has not been established or when it has been found that the manufacturer's prices do not meet the requirements of the statute. As was stated in Reap. Circular 28878:

Market value for dutiable purposes is the price at which goods are freely offered for sale in the markets of the country of exportation and not the export prices charged by dealers who buy, as all others do, in the home market and resell the same at advanced prices which include profits * * *.

As to the bobby pins covered by reappraisements 155707–A and 155709–A, manufactured by Penhas y Barouh S. de R. L., the affidavit of Mario Barouh (exhibit 4), a member of the firm, states that the highest price of his offers and sales for exportation to the United States was 12.50 Mexican pesos per package between November 1943 and August 1944; that the price of 12.50 Mexican pesos for exportation to the United States and the price of 13 Mexican pesos for Mexican consumption were their freely offered prices for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities; that the unit wholesale quantity was one great gross containing 1,728 bobby pins and that the respective prices did not vary with the quantity purchased.

In these cases (reappraisements 155707–A and 155709–A) there is no need to consider the dealer's resale prices since we have a manufacturer's price which meets the statutory requirements. *S. S. Kresge Co. et al.* v. *United States*, Reap. Dec. 4155, affirmed in *United States* v. *S. S. Kresge Co. et al.*, Reap. Dec. 4310, and in *United States* v. *S. S. Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39.

In *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246, the court, referring to the affidavits there in evidence, pointed out that although appellants' witness stated that his company was free to sell wire rope like that there involved for export to the United States to any purchaser at the same prices as those paid by the appellants, he did not state that such wire rope was freely offered for sale to all purchasers for export at those prices. The facts therein are distinguishable from those in the present case. Here, we not only have proof of actual selling prices of the manufacturer, Barouh, but in addition have his testimony that 12.50 Mexican pesos for exportation to the United States and 13 Mexican pesos for home consumption are his freely offered prices. One sale meeting the statutory requirements

has been held sufficient to establish value (*M. J. Corbett & Co. (Inc.)* v. *United States*, 20 C. C. P. A. 178, T. D. 45965).

The trial court cited *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118, and *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272, in support of its finding that:

\* \* \* Therefore, it cannot be held that the plaintiff has established *a price* at which the merchandise was freely offered by manufacturers to all purchasers in the ordinary course of trade. The statements of the manufacturers that certain prices were their freely offered prices to all purchasers are not proof of market value or price at the time of exportation of the merchandise. [Italics quoted.]

In *Transatlantic Shipping Co., Inc.* v. *United States, supra,* the court stated:

\* \* \* On the question of export value, the fact that the manufacturer sells at undisclosed prices to two unidentified customers in the United States as well as to the Absorbo Beer Pad Co., Inc., supported by no further evidence than that of the single witness who said he knew from his knowledge of the trade that his competitors could buy at the price he paid, does not in a statutory sense prove export value, as may be clearly observed by a mere reading of section 402 (d), *supra.* The statement made in the affidavit dated November 23, 1937, that the manufacturer is willing to sell to anyone at the same price charged to the Absorbo Beer Pad Co., Inc., is no proof of market value or price at the time of exportation of the merchandise, as required by the statute.

In *Golding Bros. Co., Inc.* v. *United States, supra,* in holding that the evidence was insufficient to show that the merchandise was freely offered for sale, the court noted that an affiant therein merely stated the prices to be those:

\* \* \* at which our firm would have been willing to receive from anyone in the United States, desiring to purchase the same quality in the same width, \* \* \*.

In the case now before us, the manufacturer's affidavit (exhibit 4) meets all the statutory requirements. It embraces all the elements necessary for a finding of value in that it sets forth prices which:

\* \* \* were our freely offered prices for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities. \* \* \*

We find this evidence is sufficient to overcome the presumption attaching to the appraised values in these cases and to establish a *prima facie* case that the foreign value (section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938) for this merchandise was 13 Mexican pesos per great gross. This stands uncontradicted in this record.

As to the bobby pins covered by reappraisement 155708–A, manufactured by Montal, the only evidence referring to this manufacturer is contained in the affidavit of George.A. Francis (plaintiff's exhibit 3), which states that the affiant purchased 200 packages of bobby pins from Montal at 13.50 Mexican pesos a great gross. The terms or

conditions of this sale in relation to the definition of value contained in the tariff act are not proved and, therefore, such sale does not establish statutory value. *Sears, Roebuck & Co. et al.* v. *United States, supra.* The affidavit, however, also states that Francis resold the merchandise to Honorio Cejudo Cuéllar at 16.75 Mexican pesos a great gross. Therefore, it is proper to consider whether or not Francis' resale price establishes a value under section 402 (c) or (d). The affiant states that the price of 16.75 Mexican pesos a great gross was the freely offered price for sale to all purchasers in the ordinary course of trade and in the usual wholesale quantities without restrictions whether for exportation to the United States or for home consumption and that the price did not vary with the quantity purchased.

The Government takes the same position in regard to this affidavit (exhibit 3) as was above stated in reference to exhibit 4. Our holding with respect to the affidavit in exhibit 4 applies with equal force to this affidavit (exhibit 3).

We find that the affidavit of the dealer Francis (exhibit 3) is sufficient to overcome the presumption attaching to the appraised value in this case and establish a *prima facie* case that the foreign value (section 402 (c), as amended) and export value (section 402 (d)), Tariff Act of 1930, for this merchandise was 16.75 Mexican pesos per great gross, plus stamps 29.48 Mexican pesos. There is no evidence in this record which disproves such a finding.

On this record we find the following undisputed facts:

1. That the merchandise consists of metal bobby pins imported from Mexico.

2. That the merchandise covered by reappraisements 155707-A and 155709-A was manufactured and sold by Penhas y Barouh S. de R. L.

3. That the price at which said Penhas y Barouh S. de R. L. freely offered for sale and sold such merchandise as covered by reappraisements 155707-A and 155709-A to all purchasers, at the time of exportation, in a principal market of Mexico, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, packed ready for shipment, was 12.50 Mexican pesos per great gross, plus packing, containers, and stamps as invoiced.

4. That the price at which said Penhas y Barouh S. de R. L. freely offered for sale such merchandise as covered by reappraisements 155707-A and 155709-A to all purchasers for home consumption, at the time of exportation, in a principal market of Mexico, in the usual wholesale quantities and in the ordinary course of trade, packed ready for shipment, was 13 Mexican pesos per great gross, plus packing, containers, and stamps as invoiced.

5. That the merchandise covered by reappraisement 155708-A was manufactured by Salvador Montal.

6. That said Salvador Montal sold the merchandise covered by reappraisement 155708–A to George A. Francis, at terms and conditions not established by this record.

7. That the price at which said George A. Francis freely offered for resale and resold such merchandise as covered by reappraisement 155708–A to all purchasers, either for home consumption in Mexico or for exportation to the United States, at the time of exportation, in a principal market of Mexico, in the usual wholesale quantities and in the ordinary course of trade, packed ready for shipment, was 16.75 Mexican pesos per great gross, plus stamps 29.48 Mexican pesos.

We therefore conclude as a matter of law:

1. That the proper basis of appraisement for the merchandise covered by reappraisements 155707–A and 155709–A is foreign value as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and that such value was 13 Mexican pesos per great gross, plus packing, containers, and stamps as invoiced.

2. That the proper basis of appraisement for the merchandise covered by reappraisement 155708–A is foreign value, *supra*, or export value as defined in section 402 (d) of the Tariff Act of 1930, and that such value was 16.75 Mexican pesos per great gross, plus stamps 29.48 Mexican pesos.

The judgment of the court below is accordingly reversed and judgment will be rendered accordingly.

### DISSENTING OPINION

Cole, Judge: I respectfully dissent from Judge Oliver's conclusion, holding that the manufacturers' prices meet statutory requirements.

The market conditions for the present merchandise, on the basis of the present record, are not distinguishable from those that were found to prevail in *United States* v. *Robinson & Co.*, 19 C. C. P. A. 274, T. D. 45436. In that case, the merchandise consisted of silk tie squares used in the making of neckties. The manufacturers of such and similar tie squares restricted their sales to wholesalers only. The wholesalers resold the merchandise to all who wished to purchase. Both manufacturers and wholesalers sold in wholesale quantities. Because of the restriction exercised by the manufacturers, the court held their prices were not representative of dutiable value, and accepted the wholesalers' prices as meeting the requirements of the statute.

An analysis of the affidavits (collective exhibit 2, collective exhibit 3, exhibit 4, and exhibit 5) reveals that comparable conditions existed in the principal market of Mexico City at the time of exportation of the bobby pins in question.

The manager of a Mexican company, described as "a jobber and resells to other stores and at retail," testified (collective exhibit 2) that his firm sold in the ordinary course of trade to Honorio Cejudo Cuellar, the exporter of the merchandise covered by reappraisements 155707–A and 155708–A, 2,800 packages (each containing 1 great gross of 1,728) of bobby pins made of Mexican iron at 16.75 pesos (Mexican currency) per package, which was the "freely offered price to all purchasers whether for exportation to the United States or for Mexican consumption" in the usual wholesale quantity of one great gross. Affiant further stated that he purchased 2,700 packages of the above-mentioned merchandise from the manufacturer, Penhas y Barouh S. de R. L. of Mexico, at 13 pesos per package, and that the remaining 100 packages were taken from stock on hand.

The foregoing testimony is confirmed by the affidavit, exhibit 4, of the manufacturer, who corroborated the statements concerning the transaction dealing with 2,700 packages at 13 pesos per package. The manufacturer also testified concerning a sale to Oscar García Garza of Reynosa Tamps. Mexico, in November 1943, of "100 great gross bobby pins, no special brand name, and 900 great gross bobby pins Rizador Permanente brand," at 12.50 pesos per package. It will be noted that said Garza is shown to be the exporter of the merchandise covered by reappraisement 155709–A, and that the sale referred to corresponds to the shipment itemized on the invoice with said appeal for reappraisement. The observation assumes importance in the light of further statements in the manufacturer's affidavit, exhibit 4, *supra*, that 12.50 pesos per package was his freely offered price for merchandise sold for exportation to the United States, and that 13 pesos was his price for merchandise sold for Mexican consumption. Such statements are not borne out by the present record, showing that the sales mentioned in said affidavit were to Mexican jobbers or dealers, who resold for exportation to the United States. In other words, none of the manufacturer's transactions were sales for export to the United States.

The affidavit (collective exhibit 3) was executed by an "exporter and commissionaire," who testified that he purchased from one Salvador Montal 200 packages of bobby pins or hair clips at 13.50 pesos per package, which were sold to the Mexican exporter of the merchandise covered by reappraisement 155708–A. Statements by the witness, relating to freely offered prices, are summarized in the last paragraph of the affidavit, reading: "The freely offered price for México consumption and for exportation to the United States was the same and did not exceed $16.75 pesos (Mex. Cy.) per package, for that same quality during said period."

The affidavit (exhibit 5) was executed by the president of a company, a manufacturer of bobby pins, that had been liquidated and had gone

out of business. He stated that the highest freely offered price his company received for the sale of bobby pins of iron, at the time of exportation of the merchandise in question, was 12 pesos per package. His testimony concerning steel bobby pins is immaterial to the present issue. Our consideration herein is limited to iron bobby pins.

The foregoing review of the affidavits referred to, considered in conjunction with the official papers before us, establishes that manufacturers of merchandise, such as or similar to that in question, sold at varying prices to a particular class of purchasers, i. e., jobbers or dealers in Mexico, who sold the articles for export to the United States. The dealers' price, as shown by the evidence herein, meets all the statutory elements of dutiable export value, section 402 (d) of the Tariff Act of 1930, and is equivalent to the importer's entered value, which, under the *Robinson* case, *supra*, is the proper basis for appraisement for the iron bobby pins in question.